# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT MORRIS (#R71372), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-05940 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| YOLANDA NELSON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Morris, a prisoner at Stateville Correctional Center ("Stateville"), has brought this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 against Defendant Yolanda Nelson, a correctional officer at the facility. Morris claims that Nelson violated his right to access to the courts by failing to deliver certain of his legal mail and then retaliated against him for complaining by issuing him a false disciplinary ticket. Nelson now moves for summary judgment on both of Morris's claims. (Dkt. No. 46.) For the reasons explained below, the motion is granted.

## BACKGROUND

### I.  Northern District of Illinois Local Rule 56.1

Before considering the merits of Nelson's motion, the Court first must address the sufficiency (or lack thereof) of the parties' filings. Local Rule 56.1 sets out the procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Federal Rule of Civil Procedure 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3); *see*

*also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a). The party opposing the summary judgment motion then must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The non-moving party also may present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." *Id*.

The court considering a summary judgment motion may properly limit its analysis of the facts "to evidence that is properly identified and supported in the parties' statements." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Morris's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Because Morris is proceeding *pro se*, Nelson served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2. (*See* Dkt. No. 46-3.) The notice explained to Morris how he should respond to Nelson's summary judgment motion and Local Rule 56.1 statement of material facts, and it cautioned Morris that the Court would deem Nelson's factual contentions admitted if he failed to follow the procedures set forth in Local Rule 56.1. (*Id.*) Nonetheless, Morris failed to respond to Nelson's statement of facts. The Court thus considers Nelson's statement of facts admitted to the extent it is supported by the record. That said, Morris has submitted an affidavit (Dkt. No. 52 at 5-9), which Nelson has construed as Morris's statement of additional material facts permitted under the local rule, *see* Local Rule 56.1(b)(3)(C), and to which Nelson has responded (*see* Dkt. No. 55 at 2-6). The Court will likewise treat Morris's affidavit as a statement of additional material facts. *See Braddock v. United Parcel Serv., Inc.*, No. 1:14-cv-03839, 2017 WL 770973, at *1 n.2 (N.D. Ill. Feb. 28, 2017) (considering exhibits attached to a response to the movant's statements of fact that should have been submitted as a statement of additional facts, "in the interests of justice and judicial economy").

But even while the Court liberally construes Morris's submissions, several of his factual statements are plainly irrelevant, argumentative, consist of legal conclusions, or consist of Morris pointing to grievances or other documents without explaining the significance. Because Morris is proceeding *pro se*, the Court has considered his factual assertions, but only to the extent he has pointed to evidence in the record to support them or could properly testify about the matters asserted himself. *See Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014) ("Although the Court is entitled to demand strict compliance with Local Rule 56.1, it

ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings."). With this groundwork laid, the Court turns to the facts of this case.

## II. Factual Background

At all relevant times, Morris was a prisoner housed at Stateville and Nelson was a correctional officer whose duties included delivering legal mail. (*See* Def.'s SOF ¶¶ 1, 2, Dkt. No. 46-2.) Morris claims that Nelson read his legal mail aloud and failed to deliver certain mail sent to him by his then-criminal lawyers, including issues of ABA Journal, certain photographs from his criminal case (which he later received), and an affidavit from Effie Sheppard. (*Id.* ¶¶ 2, 3, 5.)[1] Morris later received some of the ABA Journal issues, and he does not contend that the failure to receive them hindered his post-conviction petition seeking to overturn his criminal conviction. (*Id.* ¶ 4.) Morris ultimately received the photographs of the crime scene as well, and it did not take that long. (*Id.* ¶ 5.)

With respect to the affidavit from Effie Sheppard, Morris's attorneys attempted to send Morris the affidavit on May 10, 2016, but it was apparently returned with a notation that Morris was on a court writ, which was incorrect. (*Id.* ¶ 6; *see also* Ex. D to Def.'s Mot. for Summary J., Dkt. No. 46-8.) Morris received the affidavit after his attorneys re-sent it, on or around June 1, 2016, about three weeks later. (Def.'s SOF ¶ 7.) Morris used the affidavit in his state-court petition for post-conviction relief, which he filed on August 10, 2016. (*Id.* ¶ 8.) Morris did not

---

[1] As the Court understands it, the communications were with the attorneys who represented Morris in the appeal of his criminal convictions. Morris needed certain documents from these attorneys to file his post-conviction petition, which he prepared *pro se*. (*See* Pl.'s Dep. at 59:3-22, Dkt. No 46-7; Dkt. No. 46-9.) It is unclear precisely when the legal representation ended, although it was sometime before June 1, 2016. (*See* Ex. D to Def.'s Mot. for Summary J., Dkt. No. 46-8.)

miss any court deadlines as a result of the delay in receiving the Sheppard affidavit. (*Id.* ¶ 9; *see also* Pl.'s Dep. at 70:5, Dkt. No. 46-7 ("I finally received it very close to my deadlines.")).[2]

Morris further contends in his statement of additional material facts that he wanted to file his post-conviction petition before June 2016 but could not do so due to Nelson's failure to deliver the May 10, 2016 letter from his attorneys. (Pl.'s SOF ¶ 11, Dkt. No. 52.) Morris states that he wanted his post-conviction petition to be heard "in May of 2016 while Ms. Demacoupolous [*sic*] [apparently a reference to Cook County Circuit Judge Anna Helen Demacopoulos] was still on her bench. Not whenever Ms. Nelson decides to not 'play' around with my legal proceedings." (*Id.* ¶ 13.)

On April 26, 2015, Morris filed a grievance with prison administrators claiming that Nelson read and tampered with his legal mail. (Def.'s SOF ¶ 10, Dkt. No. 46-2.)[3] On June 10, 2016, Nelson issued Morris a disciplinary ticket for insolence and intimidation or threats, stating, among other things, that Morris told her, "All you know how to do is suck dick." (*Id.* ¶ 11.) Morris admitted in his deposition testimony that he had a hostile conversation with Nelson, but he could not recall making the offensive statement to her. (*Id.* ¶¶ 12–13; Pl.'s SOF at 15, Dkt. No. 52; *see also* Pl.'s Dep. at 10:24–11:2, Dkt. No. 46-7 (Morris responded, "Maybe I did," to the question of whether he made this comment to Nelson.); Pl.'s Dep. at 62:24–63:1, Dkt. No. 46-6 (Morris testified that during his confrontation with Nelson they " just went back and forth with blatant disrespect."))

---

[2] Morris testified that the post-conviction court "didn't want to allow it [the affidavit] based on certain stuff that I don't want to talk about." (*See* Pl's Dep. at 70:8-9, Dkt. No. 46-7.) But his testimony did not link his inability to use the affidavit to any delay in receiving it.

[3] Morris attached to his affidavit the grievances regarding the handling of his legal mail that he filed against Nelson on April 16, 2014, April 21, 2014, April 16, 2015, May 9, 2015, and June 10, 2016, as well as a December 16, 2016 grievance he filed contending in part that Nelson told him she was going to influence officials to transfer him to Menard. (*See* Pl.'s SOF at 11–17, 23–24, 27–28, Dkt. No. 52.)

On June 23, 2016, the prison's Adjustment Committee found Morris guilty of insolence and not guilty of intimidation or making threats. (*Id.* ¶ 14.) Morris testified that he told the hearing committee he had a "backlashing" with Nelson. (*Id.* ¶ 15.)

**DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks omitted), not to "weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). If the party seeking summary judgment demonstrates the absence of a disputed issue of material fact, the burden shifts to the non-movant, who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* Here, Nelson argues that summary judgment is warranted for three reasons: (1) Morris cannot establish that she violated his right to due process by interfering with his legal mail, (2) Morris cannot establish that she issued him a disciplinary ticket with retaliatory intent, and (3) she is entitled to qualified immunity.

I. **Denial of Access to Courts**

The Court first turns to Nelson's argument that Morris cannot establish she violated his constitutional right to due process. Prisoners have a fundamental right of meaningful access to the courts. *See Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir. 2004) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). To succeed on a claim for denial of access to the courts, however, a

prisoner must show not only that prison officials interfered with his access to his legal materials but also that the interference actually prejudiced the prisoner in his pending litigation. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). This means that the plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (quoting *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006)); *see also Howland v. Kilquist*, 833 F.2d 639, 642–43 (7th Cir. 1987) (explaining that to survive a motion for summary judgment, a plaintiff must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation"). Not every delay in access to legal materials will be sufficient. *See Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992). Rather, the plaintiff must show that the delay of which he complains actually prejudiced him. *Id.*; *see also Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir. 1995) ("Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation.").

Nelson's summary judgment motion focuses on the prejudice element of Morris's access-to-courts claim. Specifically, Nelson contends that Morris cannot show any detriment to the prosecution of his post-conviction petition based on her alleged failure to deliver or delay in delivering certain documents from his attorneys.

First, as to his allegation that Nelson delayed or denied him certain issues of the ABA Journal, Morris acknowledges both that he eventually received some of the articles and that the short delay in receiving them did not affect his ability to file a post-conviction petition. While Morris contends that the ABA Journal is a "legal notification" and that any stoppage in its

7

delivery violated his rights (*see* Pl.'s SOF ¶ 12, Dkt. No. 52), not all mail from a legal source is necessarily entitled to the protections afforded to legal mail. *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("[E]ven mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney."). Morris does not indicate how many articles (or issues of the magazine) he was ultimately denied, on what basis those denials occurred, or when they occurred. Although prisoners have a First Amendment interest in sending and receiving mail, short-term and sporadic delays in the receipt of mail do not raise constitutional issues. *Rowe v. Shake*, 196 F.3d 778, 782–83 (7th Cir. 1999). In short, nothing in the record suggests that the denials of which Morris complains amounted to a violation of his constitutional rights.

Moreover, Morris ultimately received the pictures of the crime scene and the affidavit from Effie Sheppard,[4] and there is no evidence in the record suggesting that the delay in receiving these documents impeded his ability to file his post-conviction petition. Instead, Morris relies on his assertion that his filing of the post-conviction petition was delayed for a month, and thus he was forced to file his petition in front of a new judge rather than Judge Demacopoulos. Morris contends that this was important because "every judge has different views [in] the way they see things." (Pl.'s Resp. at 2, Dkt. No. 51.)

---

[4] Neither party explains the significance of Sheppard's affidavit. But the Court takes judicial notice of the Illinois Appellate Court ruling affirming Morris's convictions for first-degree murder and attempted armed robbery for a fatal shooting outside of a currency exchange in Calumet City. *See People v. Robert Morris*, No. 1-14-0846 (Ill. App. Ct. Nov. 30, 2015), https://courts.illinois.gov/R23_Orders/AppellateCourt/2015/1stDistrict/1140846_R23.pdf; *see also General Elec. Capital v. Lease Resolution,* 128 F.3d 1074, 1081 (7th Cir.1997) (noting that a court may take judicial notice of the contents of court records). Sheppard appears to be a witness who died prior to Morris's criminal trial but had provided an affidavit indicating that she and her husband identified an individual other than Morris in a police lineup. The appeals court upheld the trial court's finding that the affidavit constituted inadmissible hearsay. *See People v. Morris*, No. 1-14-0846, ¶¶ 76–86.

Based on the records provided by Nelson, it appears that Judge Demacopoulos presided over Morris's criminal trial. (*See* Certified Statement of Conviction/Disposition at 8, Dkt. No. 55-1.) But Morris had no right to have her preside over his post-conviction proceedings. *See People v. Keener*, 655 N.E.2d 294, 300 (Ill. App. Ct. 1995); *People v. McNeal*, 536 N.E.2d 804, 805–06 (Ill. App. Ct. 1989). Furthermore, Morris's speculation that a different judge might have looked more favorably upon his claim does not amount to prejudice. *See Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017) ("Speculative prejudice is not enough for an 'actual injury.'"); *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994) ("vague, wishful, and speculative testimony" that an attorney might have taken prisoner's case if the state had paid his postage to contact legal organizations did not amount to prejudice); *Wilson v. Hubbard*, No. 15-CV-1347-NJR, 2016 WL 2941206, at *2 (S.D. Ill. May 20, 2016) (delay that caused inmate distress was insufficient to state a constitutional claim).

In his opposition to Nelson's summary judgment motion, Morris points to his allegations that Nelson read aloud from his legal paperwork when she delivered the papers to him. He contends that this conduct violated Illinois Department of Corrections regulations. (*See* Pl.'s Resp. at 3, Dkt. No. 51.) Morris does not cite a particular regulation that he claims Nelson violated; but even if he had, a violation of prison regulations is insufficient to state a claim under § 1983. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (explaining that § 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations); *see also Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) (finding that the possible violation of a Wisconsin prison regulation regarding the opening of mail was not grounds for a federal civil rights lawsuit).

Prison employees may open legal mail in the presence of the prisoner and inspect it to verify that it is in fact a communication from a lawyer related to a pending or prospective legal matter. *Guajardo-Palma*, 622 F.3d at 804–05. But they may not read confidential communications between the inmate and his attorney. *Id.*; *see also Jones v. Sheahan*, No. 01 C 6548, 2004 WL 574616, at *2 (N.D. Ill. March 22, 2004) ("Prison officials are permitted to open and inspect a prisoner's legal mail as long as it is done in the prisoner's presence and the inspector does not read the mail.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). Yet interference with confidential attorney-client communications is viewed as an access-to-the-courts claim—rather than a free-speech claim—and as such, a prisoner typically must show hindrance to his on-going litigation to prevail on such a claim. *Guajardo-Palma*, 622 F.3d at 805–06 (observing that "interception of a criminal defendant's confidential communications with his lawyer is subject to a harmless-error analysis"). Proof that the defendant has a practice of reading a prisoner's correspondence with his lawyer may be sufficient to demonstrate hindrance because knowledge that the communications will be read will likely reduce the candor of the communications. *Id.* at 805. But an isolated interference with communications between a prisoner and his lawyer is unlikely to effect the proceedings. *Id.*

Morris does not point to any specific documents that Nelson allegedly read aloud, nor does he explain when this alleged interference occurred or how it affected his ability to challenge his criminal conviction. And the grievances attached to his response are vague on those points. (*See*, *e.g.*, April 16, 2014 grievance at 11–12, Dkt. No. 52 (stating that Nelson "absentmindedly read off transcripts and documents from a legal package" and told other inmates he had an 80-year sentence for murder); April 21, 2014 grievance at 13–14, Dkt. No. 52 (stating that Nelson "rudely thumbed through" his legal mail, read his "case filing documents," and referred to him as

a "mob boss" because he received large packages of legal mail); May 9, 2015 grievance at 17, Dkt. No. 52 (stating that Nelson "played" with his legal packages); June 10, 2016 grievance at 24, Dkt. No 52 (stating that Nelson read his legal mail and commented on his conviction and sentence). Similarly, Morris testified at his deposition that Nelson commented on the length of his sentence and the location of the courthouse where his case was heard. (*See* Pl.'s Dep. at 41:4–14, Dkt. No. 46-7.) Morris also testified that it was unprofessional for Nelson to make those comments. When defense counsel asked if Nelson read anything else, Morris responded, "Multiple things. It's things I can't even remember. It's things I don't even want to say." (*Id.* at 41:20–42:6.)

Assuming Nelson made the statements about which Morris complains, however, none of those remarks concerned non-public information about Morris's criminal case. Morris has not pointed to any confidential communications to or from his attorney that Nelson read aloud, nor has he brought forth evidence that Nelson's alleged reading aloud of his legal documents chilled his communications with his lawyers or otherwise blocked his right of access to the courts. Nelson's alleged comments about Morris's convictions and sentence, or the size of his legal packages, are equally consistent with Nelson having scanned Morris's legal mail during a routine inspection. After all, a prison employee who opens legal mail to inspect it "will have to glance at the content to verify its bona fides." *Guajardo-Palma*, 622 F.3d at 805.

"Summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Morris has not produced any such evidence. The comments about which Morris complains—references to Morris's conviction and sentence and referring to him as a "mob boss"—may have been

11

unprofessional, but unprofessional conduct generally does not rise to the level of a constitutional violation. *See*, *e.g., Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (explaining that most verbal harassment by prison guards does not amount to cruel and unusual punishment).

In sum, because Morris has not shown that the conduct of which he complains prejudiced him in the litigation of his post-conviction petition, Nelson is entitled to summary judgment on his access-to-courts claim.

## II. Retaliation

The Court next turns to Morris's claim that Nelson retaliated against him due to his complaints about her conduct. A correctional officer who retaliates against a prisoner for filing a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2002). To establish a claim of retaliation, a prisoner must show: (1) that he engaged in a protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the protected activity and the deprivation. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (explaining that a prisoner must show that the protected activity was "at least a motivating factor" in the retaliatory action). If the plaintiff satisfies these elements, the burden shifts to the defendant to rebut the causal inference with evidence showing that she would have taken the same action without any retaliatory motive. *See Mays*, 575 F.3d at 650; *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005–06 (7th Cir. 2005).

If the defendant provides legitimate, non-retaliatory reasons for her actions, then the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and the real reason was retaliatory animus. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir.

12

2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379. Further, "because of 'both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated,' courts should 'examine prisoners' claims of retaliation with skepticism and particular care.'" *Verser v. Smith*, No. 14 C 1187, 2017 WL 528381, at *8 (N.D. Ill. Feb. 9, 2017) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

Here, Nelson acknowledges that Morris's April 26, 2015 grievance constituted protected speech. And she does not dispute that the June 10, 2016 disciplinary ticket qualifies as a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity. But Nelson nonetheless argues that Morris has not shown a nexus between his protected speech and the alleged retaliatory action—*i.e.*, the disciplinary ticket.[5] Specifically, it appears that the May 9, 2015 grievance was the last grievance filed before the issuance of the disciplinary ticket, and that was more than a year prior to the disciplinary action.[6]

Mere speculation regarding retaliation is not enough for a plaintiff to carry his burden at the summary judgment stage. A plaintiff may show that his protected speech was a motivating factor for alleged retaliatory conduct by presenting either direct or circumstantial evidence,

---

[5] Morris's summary judgment response refers to a December 16, 2016 grievance alleging that his transfer to Menard Correctional Center was retaliatory. But Morris cannot raise this claim for the first time in his response to Defendant's summary judgment motion. *See Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir. 1997).

[6] Morris filed a grievance on June 10, 2016, but because that grievance refers to an anticipated disciplinary action by Nelson, it appears that the grievance and the disciplinary action were filed nearly simultaneously. (*See* Dkt. No. 52 at 23–24; *see also* Ex. G to Def.'s Mot. for Summary J., Dkt. No. 46-11.)

including evidence of suspicious timing. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). But for timing to be suspicious, it must follow "close on the heels of protected expression." *Id.* at 966. A plaintiff cannot establish retaliation simply by showing that the protected activity happened before the defendant took the alleged retaliatory action. *See Washington v. Jordan*, No. CIV. 12-223-GPM, 2013 WL 1703539, at *4 (S.D. Ill. Apr. 19, 2013) (citing *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (noting that "mere temporal proximity" is rarely sufficient to create a triable issue of fact)); *see also Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) (explaining that temporal proximity alone is insufficient to establish a genuine issue of material fact). That Morris previously filed grievances against Nelson—more than a year prior to Nelson's disciplinary report—cannot support an inference of retaliatory motive. Morris simply has not provided a chronology of events that would allow a reasonable jury to infer that Nelson retaliated against him.

Even if the sequence of events laid out by Morris were sufficiently suspicious to support a finding a retaliatory intent, "suspicious timing is not enough to overcome uncontradicted evidence of other, non-retaliatory motives" for the alleged retaliatory action. *Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010) (finding that unrebutted evidence that a prison disciplined an inmate for disobeying orders overcame retaliation claim); *see also Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012) (finding officers not liable for allegedly retaliatory cell shakedown if they would have conducted it no matter what). A prisoner challenging a disciplinary action as retaliatory in nature does not have a colorable claim when he admits to having committed the alleged misconduct. *LaBoy v. Clements*, No. 15 CV 10771, 2017 WL 2936705, at *8 (N.D. Ill. July 10, 2017) (finding that a plaintiff who admitted he was making impermissible three-way calls could not argue that alleged disciplinary action was retaliatory in

14

nature, even if he was not convicted of every disciplinary charge); *see also Whitfield v. Snyder*, 263 F. App'x 518, 522 (7th Cir. 2008) (finding that a plaintiff who admitted to committing the misconduct giving rise to his discipline on several counts could not pursue retaliation claim); *Harris v. Hodge*, No. 3:11-CV-0097, 2016 WL 6581294, at *4 (S.D. Ill. Nov. 4, 2016) (finding that an inmate's retaliation claim failed because he admitted that officers searched his cell because they suspected him of having contraband).

Morris does not bring forward any evidence that Nelson's stated reason for issuing a disciplinary ticket was pretextual. To the contrary, he describes having an "outlandish disrespectful exchange" with Nelson. (*See* Pl.'s Resp. at 3, Dkt. No. 51.) His argument seems to be that it was unfair that his grievances against Nelson were disregarded. But Nelson's disciplinary report against him was sustained. (*See id.* at 3-4.) "Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners." *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)); *Watkins v. Kasper*, 599 F.3d 791, 796–797 (7th Cir. 2010)). Morris did not have a right to speak disrespectfully to Nelson, even if she also was disrespectful. State regulations define prisoner insolence as "talking, touching, gesturing or other behavior that harasses, annoys or shows disrespect." Ill. Admin. Code tit. 20, § 504 App. A. While Morris may quibble with the precise words that were said, there is no real dispute about whether he spoke disrespectfully to Nelson. Under such circumstances, his retaliation claim fails as a matter of law.

## CONCLUSION

For the reasons explained above, Nelson's motion for summary judgment (Dkt. No. 46) is granted. The Court finds that there are no triable issues of fact with respect to whether Nelson

violated Morris's rights in her handling of his correspondence from his attorney or whether she violated his First Amendment rights by retaliating against him for complaining about her alleged misconduct. In light of these conclusions, the Court need not address Nelson's qualified immunity argument because there is no evidence that her conduct was constitutionally deficient.

The Clerk will enter Final Judgment in favor of Nelson. If Morris wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of the judgment. *See* Fed. R. App. P. 4(a)(1). If Morris appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Moreover, if the appeal is found to be non-meritorious, Morris could be assessed a "strike" under 28 U.S.C. § 1915(g). Any prisoner who accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, may not file another suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. If Morris seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Morris need not bring a motion to reconsider this Court's summary judgment ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its decision, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). Morris is advised that the time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Moreover, any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must

be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended either. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:

Dated: March 23, 2020

Andrea R. Wood
United States District Judge